IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAVID P., <br><br> Plaintiff, <br><br> vs. <br><br> MARTIN O'MALLEY, Commissioner of Social Security, <br><br> Defendant. | 8:23-CV-346 <br><br> MEMORANDUM AND ORDER |

This matter is before the Court on the denial, initially and upon reconsideration of the plaintiff's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. The Court has considered the parties' filings and the administrative record. For the reasons discussed below, the Court finds that the Commissioner's decision was supported by substantial evidence, so the plaintiff's motion for reversal (filing 9) will be denied, and the Commissioner's motion for an order affirming his decision (filing 13) will be granted.

I. PROCEDURAL HISTORY

On March 17, 2021, the plaintiff applied for disability benefits, alleging disability beginning September 30, 2020. Filing 7-5 at 2. His claim was denied initially and upon reconsideration. Filing 7-3 at 2-16. The plaintiff requested a hearing before the administrative law judge (ALJ), after which the ALJ found the plaintiff was not disabled. Filing 7-2 at 12, 21. The Appeals Council of the Social Security Administration denied the plaintiff's request for review of the ALJ's decision. Filing 7-2 at 2. Accordingly, the plaintiff seeks judicial review

of the ALJ's decision as the final decision of the Commissioner under 42 U.S.C. § 405(g). Filing 1.

## II. FACTUAL BACKGROUND

### 1. Work, Family, and Medical History

The plaintiff was born in 1957. Filing 7-5 at 2. His claim for disability is based on alleged cardiovascular conditions and diabetes. Filing 7-6 at 3. He was able to retire early, on September 30, 2020, but alleged his medical conditions were adversely affecting his ability to perform his job. *Id.*

From October 1990 to September 2020, the plaintiff worked as an aircraft mechanic for American Airlines, diagnosing and repairing mechanical problems on airplanes. The plaintiff said the job was strenuous and required a lot of heavy lifting and carrying of various airplane parts. Filing 7-6 at 5.

The plaintiff has a history of ischemic cardiomyopathy after heart bypass surgery in 2013. An implantable cardioverter-defibrillator (ICD) was implanted October 16, 2017. Filing 7-7 at 34. In May 2020, the plaintiff reported to his treatment provider, Dr. John Schleifer, that he was able to "exert himself as much as is necessary to accomplish his daily activities." His diagnoses included paroxysmal atrial fibrillation, ischemic cardiomyopathy, diabetes mellitus type 1, coronary artery disease, mixed hyperlipidemia, hypertension, with a history of cardiac catheterization, coronary artery bypass graft, and his ICD. Filing 7-7 at 49.

At an appointment in August 2020, the plaintiff told his physician assistant, Lisa Carter, that he would retire September 30 and looked forward to having a more balanced diet and weekly routine. Filing 7-7 at 42. He reported being active on his feet at work. Filing 7-7 at 42.

The plaintiff accepted a buyout from his employer and did not work after September 30, 2020, the alleged onset date. Filing 7-2 at 13. In December 2020

he was seen for his atrial fibrillation. Schleifer reviewed the pacemaker data and found everything remained stable with the device. Filing 7-7 at 36. The plaintiff denied symptoms such as fever, chills, palpitations, chest pain, shortness of breath, edema, dizziness, syncope or presyncope, or ICD shocks. Schleifer noted that the plaintiff had not had any recent true atrial fibrillation episodes and he had no cardiac symptoms or medication adverse effects. He ordered the plaintiff to return in six months. Filing 7-7 at 36.

In February 2021, the plaintiff reported to Dr. Samer H. Sayyed that he had retired and was "more busy managing his personal life than he was while he was employed." He reported being able to perform "all his daily activities without limitation." Filing 7-7 at 24. Sayyed noted the plaintiff's cardiology care was optimized under current therapy, but his diabetes was not optimally controlled. Filing 7-7 at 28. The plaintiff saw Sayyed again in April 2022 and discussed spells of dizziness and lightheadedness lasting from a few minutes up to half an hour when waking up in the morning. Filing 7-7 at 212.

### 2. MEDICAL OPINIONS

#### (a) Provider Opinions

In support of his application, the plaintiff submitted a disability exam medical report from physician assistant Abbey Hansen, dated November 11, 2021. Filing 7-7 at 165. Her examination showed the plaintiff ambulated with a steady gait, needed no assistive device, and showed full strength at 5/5 in the upper and lower extremities with "good grip strength." Filing 7-7 at 165. He had no obvious joint swelling, had "somewhat limited" range of motion to his neck (which the plaintiff believed was due to the tightness in his chest since open heart surgery), and had "some limited" range of motion to his left shoulder with joint pain. Filing 7-7 at 165. Hansen did not provide specific opinions

3

concerning work limitations, leaving "all disability eligibility decisions to the Disability Committee." Filing 7-7 at 165.

(b) State Agency Consultant Opinions

Jack Hutcheson, Jr., M.D., an internist, reviewed the medical file at the initial level in November 2021. The assessment notes that the plaintiff's statements regarding his symptoms were partially consistent with the total medical and non-medical evidence in the file, but the alleged limitations on his activities of daily living were not consistent with the objective evidence. Filing 7-3 at 5-6. Hutcheson assigned a 25-pound limit for occasional and frequent lifting and/or carrying. Filing 7-3 at 6. Hutcheson provided limitations consistent with less than medium work. He thought the plaintiff would be restricted to only frequently climbing ladders, ropes, and scaffolds, and would be limited in his ability to reach overhead. Filing 7-3 at 6-7. In all other categories of postural and manipulative limitations, Hutcheson assigned an "unlimited" rating. Filing 7-3 at 6.

Joanell K. Wheeler, M.D., a radiologist, provided non-examining agency medical consultant opinions at the reconsideration stage of the plaintiff's claim, on March 7, 2022. Filing 7-3 at 13-15. Wheeler found that the plaintiff's past relevant work was at medium level, that he had a residual functional capacity for light level work, and that he had the transitional skills for multiple light and sedentary level jobs in the national economy. Filing 7-3 at 15-16. Wheeler opined that, based on the documented findings, the plaintiff was not disabled. Filing 7-3 at 15-16.

3. ADMINISTRATIVE HEARING

At the time of the administrative hearing on July 25, 2022, the plaintiff testified regarding his past work as an airplane mechanic, and the increasing

4

difficulty he had performing the physical work. He saw a cardiologist for periodic checkups and review of his ICD. Filing 7-2 at 40. He reported pain in both hips and in his left shoulder, and difficulty lifting both arms to shoulder level. He discussed his diabetes, dizziness and vision loss. He testified that he managed his and his wife's household—including most of the grocery shopping, cleaning, and cooking—but no outside chores such as mowing or snow removal. Filing 7-2 at 17. He managed his wife's medication regimen and helped with her mobility, as she had a tendency to lose her balance and fall easily. Filing 7-2 at 32.

The vocational expert testified that the plaintiff's past work was available "as it's done in the national economy" but not as the plaintiff performed it, as the plaintiff had been performing at a heavy level of exertion. Filing 7-2 at 52.

### 4. SUBSEQUENT ANALYSIS AND ALJ FINDINGS
#### (a) Steps One and Two

To determine whether a claimant qualifies for disability benefits, an ALJ performs a five-step sequential analysis of the claim. 20 C.F.R. § 404.1520(a)(4). At the first step, the claimant has the burden to establish that he has not engaged in substantial gainful activity since his alleged disability onset date. *Gonzales v. Barnhart,* 465 F.3d 890, 894 (8th Cir. 2006); § 404.1520(a)(4)(i). Regarding step one, the ALJ found that the plaintiff met that requirement. Filing 7-2 at 13-14.

At step two, the medical severity of the claimant's impairment is considered. The claimant has the burden to prove a medically determinable physical or mental impairment or combination of impairments that significantly limits his physical or mental ability to perform basic work activity. *Gonzales,* 465 F.3d at 894. The ALJ found the following severe

5

impairments: "coronary artery disease (status-post coronary artery bypass grafting; paroxysmal atrial fibrillation (status-post implantable cardioverter defibrillator); and chronic systolic heart failure." Filing 7-2 at 13-14. In addition, the ALJ found the medical evidence to establish "diabetes mellitus (type 1), hypertension, hyperlipidemia, degenerative arthritis of the left glenohumeral joint, and obesity" as medically determinable impairments. However, the ALJ found those conditions did not significantly limit the plaintiff's ability to perform basic work activities, considered singly or in combination. Filing 7-2 at 14.

The ALJ found the plaintiff's statements regarding his adherence to diabetic treatment were inconsistent with treatment notes showing that he often missed doses of insulin or did not monitor blood sugar and medication dosing levels as recommended. Filing 7-2 at 14. The plaintiff's medical providers had consistently noted that the plaintiff gave no indication that he didn't understand the treatment regimen, that the treatment was effective when the plaintiff followed it, and noted no other possible reason for not adhering to the regimen other than the plaintiff's lack of concern or attention to treatment. Filing 7-2 at 14. The ALJ found the plaintiff's hypertension and hyperlipidemia were under effective medical management with medication and lifestyle adjustments. *Id.*

For degenerative arthritis, the treatment recommendation was conservative: take Tylenol as needed. As for obesity, the ALJ performed an individualized assessment of the effect of obesity on the plaintiff's functioning and concluded it was "not severe." The plaintiff had not alleged specific functional limitations due to obesity, and the ALJ found the non-severe impairments posed no more than minimal limitation on the plaintiff's ability to perform basic work-related activities. Filing 7-2 at 15.

(b) Step Three

At step three, the medical severity of the claimant's impairments is further considered. § 404.1520(a)(4)(iii). If the claimant's impairments meet or equal a presumptively disabling impairment listed in the regulations, the analysis ends, and the claimant is automatically found disabled and entitled to benefits. *Gonzales*, 465 F.3d at 894.

The ALJ found that, although the plaintiff has impairments that are considered severe, there is no medical evidence in the record to support a finding that his impairments, singly or in combination, meet or equal any specific listing in 20 CFR Part 404, Subpart P, Appendix 1. Filing 7-2 at 16.

The ALJ specifically noted that he looked to 4.00 for the cardiovascular system and found the plaintiff's conditions "do not produce the signs and findings required" of 4.02 (chronic heart failure), 4.04 (ischemic heart disease), or 4.05 (recurrent arrhythmias), nor does the record show "*very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living* for any consecutive 12-month period, as required in relevant part by 4.02B1 and 4.04C." Filing 7-2 at 16 (emphasis in original).

(c) Steps Four and Five

At step four, the claimant has the burden to prove that he lacks the residual functional capacity to perform his past relevant work. *Gonzales*, 465 F.3d at 894; §§ 416.920(a)(4)(iv) & (f), 404.1520(a)(4)(iv) & (f). If the claimant can still do his past relevant work, he will be found to be not disabled; otherwise, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and work experience, that there are other jobs in the national economy that the claimant can perform. *Gonzales,* 465 F.3d at 894; §§ 416.920(a)(4)(v) & (g), 404.1520(a)(4)(v) & (g).

7

At step four, the ALJ found that the plaintiff had the residual functional capacity to perform medium work as defined in § 404.1567(c), except "he can frequently perform overhead reaching and frequently climb, stoop, kneel, crouch, and crawl." Filing 7-2 at 16.

In assessing the plaintiff's capacity to perform past relevant work, the ALJ followed a two-step process: First, determine whether any underlying medical condition, physical or mental, could cause the plaintiff's pain or symptoms; and second, evaluate the extent to which the underlying condition limits the plaintiff's work-related activities. Filing 7-2 at 17. The ALJ considered the intensity, persistence, and other limiting factors of the underlying conditions. Filing 7-2 at 17. The ALJ determined that the plaintiff's physical impairments may cause some of his symptoms, but the plaintiff's statements regarding the intensity, persistence, and limiting effects his symptoms were not consistent the medical evidence and other evidence in the record. Filing 7-2 at 17.

In determining the plaintiff's residual functional capacity and his ability to perform past work and other work, the ALJ considered the persuasiveness of the medical opinions in the record and whether the opinions were consistent with the medical record. The ALJ found the state agency medical consultant opinion at the initial level regarding the plaintiff's work limitations was persuasive insofar as the plaintiff's impairments warranted restrictions on exertional, postural, and overhead reaching, but not entirely persuasive as to the degrees of the exertional and postural restrictions. Filing 7-2 at 19. The ALJ found there was no apparent support for an occasional 25-pound exertional restriction in the consultant's report. Filing 7-2 at 19. The postural restrictions were inconsistent with limited abnormalities revealed by physical

8

exams, particularly musculoskeletal and neurological findings of intact strength, range of motion, and sensation. Filing 7-2 at 19-20

The ALJ found the State agency medical consultant at the reconsideration level had limited persuasive value. Filing 7-2 at 20. Specifically, the consultant largely adopted the assessment at the initial level except for reducing exertional demands to that at the light level. The ALJ found the consultant cited no specific evidence to support greater exertional restrictions or the addition of environmental limitations. The ALJ considered that the consultant at the initial level specialized in internal medicine, while the consultant at the reconsideration level specialized in radiology, noting that the only imaging of record is that of the plaintiff's left shoulder.

The ALJ also considered the assessment of the plaintiff's physician assistant. Filing 7-2 at 20. But the ALJ found that she "essentially summarized" the plaintiff's self-reported symptoms and limitations, and that some of those self-reported symptoms were unsupported by the findings of her examination and other examinations in the record. Filing 7-2 at 20.

The vocational expert classified the plaintiff's past relevant work as an aircraft mechanic, a skilled job generally performed at the medium level of exertion and actually performed by the plaintiff at the heavy level of exertion. The vocational expert testified that a hypothetical individual with the same age, education, work experience, and residual functional capacity as the plaintiff would be able to perform his past relevant work "as generally performed, though not as it is actually performed."[1] Filing 7-2 at 21. The ALJ determined that the plaintiff could perform his past relevant work as an

---

[1] That phrasing is confusing, but read in context, the Court understands the ALJ to be saying that the plaintiff could generally do the job of an aircraft mechanic—just not in the way that he *had* been doing it.

aircraft mechanic, which does not require the performance of work-related activities precluded by the plaintiff's RFC. Based on these findings, the ALJ determined that the plaintiff was not disabled and was not entitled to benefits. Filing 7-2 at 21.

## III. STANDARD OF REVIEW

The Court reviews a denial of benefits by the Commissioner for errors of law and to determine whether the denial is supported by substantial evidence on the record as a whole. *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012) (citing § 405(g)). Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion. *Id.* The Court considers the entire administrative record—the evidence that detracts from the decision, as well as the evidence that supports it—but the evidence is not reweighed. *See id.* Instead, the Court will disturb the ALJ's decision only if it falls outside the available "zone of choice." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021). And the ALJ's decision is not outside the zone of choice simply because this Court might have reached a different conclusion as the initial finder of fact. Id. Rather, if the record contains evidence that a reasonable person might accept as adequate to support the ALJ's conclusion, the Court may not reverse—even if it would reach a different conclusion, or merely because there is also evidence that might support a contrary outcome. *See id.*; *Byes*, 687 F.3d at 915.

The Court reviews for substance over form: an arguable deficiency in opinion-writing technique does not require the Court to set aside an administrative finding when that deficiency had no bearing on the outcome. *Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011). And the Court defers to the ALJ's determinations regarding the credibility of testimony, so long as they

are supported by good reasons and substantial evidence. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011).

## IV. DISCUSSION

The plaintiff generally alleges that the ALJ erred by not fully and fairly developing the record concerning "some medical evidence" support for the RFC. Further, the plaintiff makes a procedural argument that this case must be remanded to a new ALJ because the ALJ who issued the finding was not properly appointed. Filing 10 at 24.

### 1. Full and Fair Record in Support for the RFC

The plaintiff disputes the ALJ's rejection of the medical consultants' finding that he is capable of light work involving lifting up to 25 pounds, and instead finding that the plaintiff is capable of at least medium work as defined in 20 CFR § 404.156(c), involving lifting up to 50 pounds. The plaintiff asserts the ALJ "played doctor" in this hearing decision and erred by "favoring his gut over the available medical opinions in this case." Filing 10 at 14. The plaintiff argues the ALJ was obligated to further develop the record before making such a finding.

According to the plaintiff, because the ALJ rejected Hutcheson's and Wheeler's opinions of the plaintiff's 25-pound exertional limitations, the ALJ should have further developed the record, instead of drawing his "own inferences." *See Combs v. Berryhill,* 878 F.3d 642, 647-48 (8th Cir. 2017). He asserts if the ALJ does not believe the professional opinions are sufficient to form an opinion as to the claimant's ability to work, the ALJ should further develop the record. *See Lauer v. Apfel,* 245 F.3d 700, 706 (8th Cir. 2001).

In support, the plaintiff cites this Court's decision in *Linden v. Colvin*, No. 7:15-CV-5005, 2017 WL 1377924, at *4 (D. Neb. Apr. 14, 2017). In that

11

case, the ALJ likewise had found the medical expert testimony unpersuasive. *Id.* at \*2-3. So, the ALJ crafted her own physical limitations for the claimant, and assessed his RFC accordingly. *Id.* at \*2. And the Court found that to be unsupported by sufficient medical evidence, and remanded the case for further proceedings after finding that the ALJ had failed to sufficiently develop the record. *Id.* at \*4.

There are, however, key differences between *Linden* and this case. In *Linden*, the medical opinions rejected by the ALJ were 2 years out of date by the time of the administrative hearing, and the claimant had been diagnosed with a *degenerative* medical condition, meaning those opinions were badly out of date. *See id.* at \*4. And it was absolutely clear at the administrative hearing that some relevant medical records had not been put before the ALJ. *Id.* The ALJ's rejection of the claimant's testimony was based, in part, on his supposed failure to see a specialist—when, in fact, he had been referred to a specialist, but those records weren't before the ALJ and the ALJ didn't even ask about it at the administrative hearing. In sum, in *Linden*, a lot of important information was missing from the record, and the ALJ knew (or at least should have known) that it was missing. *See id.*

In this case, however, there's nothing to indicate that the ALJ didn't have all the available relevant information. The opinions proffered were relatively current. The ALJ did not draw his own inferences to craft medical limitations out of whole cloth—rather, he accepted some limitations and rejected others by weighing each opinion, evaluating its persuasiveness, and comparing it to the record as a whole. Filing 7-2 at 16-20. The acceptance of some limitations, resulting in an RFC rating of medium work, is best characterized as giving the plaintiff the benefit of the doubt.

An ALJ is not required to seek additional clarifying statements "unless a crucial issue is undeveloped." *Combs,* 878 F.3d at 647. The record here includes disability and work background reports, medical records (including a consultative examination), and the transcript from the hearing. The plaintiff and his counsel discussed his alleged limitations with the ALJ. Filing 7-2 at 32-60. There is no indication that the opinions regarding the plaintiff's RFC were undeveloped; rather, the plaintiff is asking this Court to reweigh the evidence before the ALJ. *But see Byes,* 687 F.3d at 915.

The ALJ's assessment of the persuasiveness and consistency of the various medical opinions is supported by substantial evidence. The ALJ reviewed the treatment notes and the plaintiff's self-reported activities, and he reviewed the level of analysis present in the agency consultant opinions. The ALJ found the treatment notes regarding the plaintiff's diabetes are inconsistent with his testimony at the hearing. Specifically, the ALJ noted that the agency medical consultant at the reconsideration level acknowledged the plaintiff's heart impairments were well controlled, but found the plaintiff's conditions combined with diabetes would reduce his exertional limitations to light work. The ALJ found that the limitations recommended were inconsistent with the plaintiff's limited subjective complaints and exam abnormalities of record. Filing 7-2 at 20.

The ALJ's conclusion that the plaintiff was capable of medium level exertional work, and performing past relevant work as it is generally performed, is supported by the record as a whole.

## 2. FEDERAL VACANCIES REFORM ACT

The plaintiff's final argument is that the ALJ in this case was not constitutionally appointed, requiring a remand with a new ALJ. Filing 10 at 17. The plaintiff argues that the ALJ's appointment was deficient under the

13

Federal Vacancies Reform Act, 5 U.S.C. § 3345 et seq., because Acting Commissioner Nancy Berryhill was not properly serving when she ratified the appointment of various ALJs, including the ALJ in this case. But in *Dahle v. Kijakazi,* 62 F.4th 424 (8th Cir. 2023), the Eighth Circuit Court of Appeals unequivocally rejected that argument. *Id.* at 429. The plaintiff acknowledges Dahle controls this Court's analysis. Filing 10 at 24. So, the plaintiff's argument must fail.

IT IS ORDERED:

1. The plaintiff's motion for reversal (filing 9) is denied.

2. The Commissioner's motion to affirm (filing 13) is granted.

3. The plaintiff's complaint is dismissed.

4. A separate judgment will be entered.

Dated this 26th day of August, 2024.

BY THE COURT:

John M. Gerrard
Senior United States District Judge